**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**



| | | |
|---|---|---|
| WILDCAT LICENSING LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | CIVIL ACTION NO. 6:23-cv-00450 |
| v. | § | |
| | § | |
| YUNEEC INTERNATIONAL CO., LTD., | § | **JURY TRIAL DEMANDED** |
| | § | |
| *Defendant.* | § | |

## ORIGINAL COMPLAINT

Plaintiff Wildcat Licensing LLC ("Plaintiff" or "Wildcat Licensing"), by and through its attorneys, file its Original Complaint against Yuneec International Co., Ltd. ("Yuneec" or "Defendant"), and demanding trial by jury, hereby alleges as follows:

### I.  NATURE OF THE ACTION

1.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 271, *et seq.*, to enjoin and obtain damages resulting from Defendant's unauthorized use, sale, and offer to sell in the United States of products, methods, processes, services and/or systems that infringe Wildcat Licensing's United States patents, as described herein.

2.      Defendant manufactures, provides, uses, sells, offers for sale, imports, and/or distributes infringing products and services, and encourage others to use its products and services in an infringing manner, including their customers, as set forth herein.

3.      Wildcat Licensing seeks past damages and prejudgment and post-judgment interest for Defendant's past infringement of the Wildcat Licensing Patents, as defined below.

## II.  PARTIES

4.      Plaintiff Wildcat Licensing is a limited liability company organized and existing under the laws of the State of Illinois.

5.      On information and belief, Defendant Yuneec International Co., Ltd. is a company organized under the laws of China, with a place of business located at B 15F, 461 HongCao Road, CaoHeJing Software Building, Shanghai, P.R.C.  On information and belief, Yuneec is responsible for the development of Yuneec branded products sold in the United States.  Although Yuneec is engaged in business in the State of Texas, it has not designated an agent for service of process in the state.  The Texas Secretary of State, therefore, is an agent for service of process pursuant to TEX. CIV. PRAC. & REM. CODE § 17.044(b). Yuneec may be served with process by serving the Texas Secretary of State, James E. Rudder Building, 1019 Brazos Street, Austin, Texas 78701.

## III. JURISDICTION AND VENUE

6.      This is an action for patent infringement arising under the Patent Laws of the United States, in particular 35 U.S.C. §271, 281, 283, 284, and 285. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and 1338(a).

7.      Upon information and belief, Defendant transacts substantial business in the State of Texas and in this District. Defendant, directly and through subsidiaries or intermediaries (including distributors, retailers, resellers and others), has purposefully and voluntarily placed one or more of their infringing products, as described below, into the stream of commerce with the expectation that these infringing products will be purchased and used by customers in the District. Defendant has committed acts of patent infringement within the District.

8.      This Court has personal jurisdiction over Defendant because it has committed acts giving rise to this action within the State of Texas and within this District. The Court's exercise of

jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice because Defendant has established minimum contacts with the forum with respect to both general and specific jurisdiction.

9.      This Court has personal jurisdiction over Defendant pursuant to TEX. CIV. PRAC. & REM. CODE § 17.041 et seq. General personal jurisdiction exists over Defendant because Defendant has minimum contacts with this forum as a result of business regularly conducted within the State of Texas and within this district, and, on information and belief, specific personal jurisdiction exists because Defendant has, at least, committed the tort of patent infringement within Texas and this district. Personal jurisdiction also exists because, on information and belief, Defendant has: (1) operated the Internet website, https://yuneec.online/, which is available to and accessed by users, customers, and potential customers of the Defendant within this judicial district; (2) sold Defendant's drone and drone-related products within this judicial district; (3) transacted business within the State of Texas; (4) actively infringed and/or induced infringement in Texas; (5) established regular and systematic business contacts within the State of Texas; and (6) continue to conduct such business in Texas through the sale of Defendant's drone and drone-related products. Accordingly, this Court's jurisdiction over the Defendant comports with the constitutional standards of fair play and substantial justice and arises directly from the Defendant's purposeful minimum contacts with the State of Texas.

10.     This Court also has personal jurisdiction over Defendant because, on information and belief, Yuneec and its authorized resellers (or those acting on their behalf) and Yuneec's customers committed and continue to commit acts of patent infringement in this judicial district. Defendant transacts business within the State of Texas and in this judicial district and have committed acts of patent infringement within the State of Texas and this judicial district as set

forth hereinafter. Such business includes, without limitation, Defendant's operation of the Internet website, https://yuneec.online/, which is available to and accessed by users, customers, and potential customers of the Defendant within this judicial district, and the sale of Defendant's drone and drone-related products within this judicial district, both online at https://yuneec.online/ and through other official online stores, resellers/retail stores, and varied dealers within this jurisdiction.

11.     In addition to Defendant's online store at https://yuneec.online/drones/, Defendant has also targeted this District, including by supplying national retailers such as Amazon (https://www.amazon.com/Yuneec-YUNFCAUS-Compact-Bluetooth-Controller/dp/B0757KGMF5/ref=asc_df_B0757KGMF5/?tag=hyprod-20&linkCode=df0&hvadid=241938192625&hvpos=&hvnetw=g&hvrand=13529240873639607389&hvpone=&hvptwo=&hvqmt=&hvdev=c&hvdvcmdl=&hvlocint=&hvlocphy=9028320&hvtargid=pla-562726614889&psc=1),                                              Walmart (https://www.walmart.com/browse/electronics/yuneec-drones/3944_5525941_5960206_1875211), and regional retailers such as King's Hobby in Austin. https://kingshobby.com/manufacturer/yuneec

12.     Yuneec targets the State of Texas with advertising campaigns to avail itself of this State and forum.

13.     Defendant has also authorized online retailers, as listed at https://us.yuneec.com/value-added-reseller/, and has extended warranties to products purchased from the authorized Yuneec resellers. Most, if not all, of these online retailers are available to and accessed by users, customers, and potential customers of the Defendant within this judicial district (e.g., https://www.bhphotovideo.com and Walmart).



https://www.bhphotovideo.com/c/buy/Shop-by-Brand-YUNEEC/ci/4/phd/3827785060/N/4294255798

14. Defendant has also designated professional dealers operating in the United States, all of which have online stores through which to sell Defendant's drones and drone-related products, which are available to and accessed by users, customers, and potential customers of the Defendant within this judicial district.

15. On information and belief, Yuneec maintains a substantial amount of authorized resellers located within the district. This information presented is not wholly representative of all authorized resellers located within the Western District of Texas, but merely demonstrative.

16. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b) and 28 U.S.C. § 1391(b), (c) because Defendant reside heres, because Defendant is a foreign entity not incorporated in the United States, and because Defendant has committed acts of infringement in this judicial district.

ORIGINAL COMPLAINT
-5-

## IV.  FACTUAL ALLEGATIONS

### Wildcat Licensing Patents

17.     On June 5, 2007, United States Patent No. 7,228,232 ("the '232 patent"), entitled "Navigating a UAV with Obstacle Avoidance Algorithms," was duly and legally issued by the United States Patent and Trademark Office ("USPTO") to William Kress Bodin, Jesse Redman, and Derral Charles Thorson, with the International Business Machines Corporation ("IBM") as assignee.

18.     On June 12, 2007, United States Patent No. 7,231,294 ("the '294 patent"), entitled "Navigating a UAV," was duly and legally issued by the USPTO to William Kress Bodin, Jesse J. W. Redman, and Derral C. Thorson, with IBM as assignee.

19.     On October 23, 2007, United States Patent No. 7,286,913 ("the '913 patent"), entitled "Navigating a UAV with Telemetry Through a Socket," was duly and legally issued by the USPTO to William Kress Bodin, Jesse J. W. Redman, and Derral C. Thorson, with IBM as assignee.

20.     The '232, '294, and '913 patents are referred to hereinafter as "the Wildcat Licensing Patents."

21.     Plaintiff Wildcat Licensing LLC is the owner of the entire right, title, and interest in and to the Wildcat Licensing Patents, with the right to sue in its own name. The Wildcat Licensing Patents were initially assigned by IBM to Daedalus Group LLC on or about September 30, 2019. The respective assignments were recorded on November 14, 2019, at the U.S. Patent and Trademark Office.  Daedalus Group LLC then assigned the patents to Wildcat Licensing LLC, on or about January 24, 2020.  The respective assignments were recorded on or about January 29, 2020, at the U.S. Patent and Trademark Office.

22.     Each of the Wildcat Licensing Patents are presumed valid under 35 U.S.C. § 282.

23.     Each of the Wildcat Licensing Patents relate to innovative technology for piloting, controlling, navigating, and optimizing flight missions for unmanned aerial vehicles ("UAV" or "drone").

**<u>United States Patent No. 7,228,232</u>**

24.     The '232 patent claims UAV obstacle avoidance technologies that anticipated the future position of the UAV through GPS sequencing and avoid obstacles in dependence of that anticipated future position. Such obstacles may be physical three-dimensional objects such as buildings, mountains, and others that will occur to those of skill in the art; or two and three - dimensional geographic areas such as a no-fly zone. In the present complaint, Defendant's suite of drones and drone-related products infringe on this inventive aspect of the '232 patent. Representative of this infringement is Defendant Yuneec's Typhoon drones. These drones house a GPS module on-board, which transmits UAV location and flight control instructions back and forth from the UAV user's remote-control device, and vice versa. In so doing, the GPS module tracks the UAV location and ensures the UAV is not entering a restricted zone and/or no fly zones. Such interference includes, but is not limited to, decreased speed, takeoff failure, and flight termination.

25.     The '232 patent overcomes shortcomings in the prior art, which required conventional UAV operators to manually control the flight using the camera images from the UAV that were provided to the operator through downlink telemetry (col. 1, lines 18-23). Certain of the inventive aspects of the '232 patent addressed the need for improvements in the area of UAV navigation, by automating certain aspects of the UAV mission (col. 1, lines 26- 30). More specifically, the inventive aspects of automatically identifying and avoiding obstacles that would

otherwise disrupt the flight of the UAV (col. 17, lines 66-67), were not well-understood, routine, or conventional at the time of the invention.  Indeed, during prosecution of the '232 patent, the PTO recognized in an Office Action dated August 25, 2006 that the prior art "does not show or reasonably suggest, in combination with the other claimed subject matter, anticipating the future position of the UAV, identifying an obstacle in dependence upon the future position, selecting an obstacle avoidance algorithm and piloting the UAV using the [selected] obstacle avoidance algorithm." These steps, captured in claim 1 of the '232 patent, were among the inventive concepts of the '232 patent.

### United States Patent No. 7,231,294

26.     The '294 patent claims UAV navigation technologies that maps a UAV's position, from starting position and through waypoints, for a UAV user on a GUI map on a remote-control device. In the present complaint, Defendant's suite of drones and drone-related products infringe on this inventive aspect of the '294 patent. Representative of this infringement is Defendant Yuneec Typhoon drones, which map the UAVs' position from the start of a mission, through mission waypoints, and to the end of a mission.

27.     The '294 patent overcomes shortcomings in the prior art, which required conventional UAV operators to manually control the flight using the camera images from the UAV that were provided to the operator through downlink telemetry (col. 1, lines 17-20). Certain of the inventive aspects of the '294 patent addressed the need for improvements in the area of UAV navigation, by automating certain aspects of the UAV mission (col. 1, lines 24- 28). More specifically, the inventive aspects of automatically selecting waypoints using a mouseclick or joystick button click, to control the flight path of the UAV (col. 1, lines 33- 36), were not well-understood, routine, or conventional at the time of the invention. Moreover, the ability to upload

multiple waypoints enabled more complex missions to be performed with just a few keystrokes or mouseclicks on the remote control device (col. 1, lines 57-59 and col. 2, lines 2-4), which was also not well-understood, routine, or conventional at the time of the invention.   Indeed, during prosecution of the '294 patent, the PTO recognized in a Notice of Allowance dated February 7, 2007, that the '294 patent made "a significant improvement in [the] UAV field." The PTO also recognized that "receiving in a remote control device a user's selection of a GUI map pixel that represents a waypoint for UAV navigation, the pixel having a location on the GUI" and "mapping the pixel's location on the GUI to Earth coordinates of the waypoint" were not performed in the conventional systems of the prior art. These are among the inventive concepts of the '294 patent, and are captured in the steps of claim 1.

United States Patent No. 7,286,913

28.    The '913 patent claims UAV navigation technologies for downlink telemetry of the UAV to the user's remote-control device, which then uplinks telemetry and flight control instructions to the UAV through a socket. Here, a socket is an end-point of a two-way communication link between two application programs running on a network. This communication link pairs the user's remote-control device, or controller, with the drone or UAV to enable the user to operate the UAV.  In some instances, a socket on a UAV would be considered a server-side socket, and a socket on a remote-control device may be considered a client socket. In the present complaint, Defendant's suite of drones and drone-related products infringe on this inventive aspect of the '913 patent. Representative of this infringement is Defendant's Yuneec Typhoon drones, which house a receiver/transmitter on-board, which serves as the server-side socket transmitting downlink telemetry to the UAV user's remote-control device through one or more application

programs. Then using the selected remote-control device application, which may serve as the client socket, uplink telemetry and flight control instructions are transmitted back to the UAV.

29.     The '913 patent overcomes shortcomings in the prior art, which required conventional UAV operators to manually control the flight using the camera images from the UAV that were provided to the operator through downlink telemetry (col. 1, lines 18-21). Certain of the inventive aspects of the '913 patent addressed the need for improvements in the area of UAV navigation, by automating certain aspects of the UAV mission (col. 1, lines 25-28). More specifically, the inventive aspects of automatically selecting waypoints using a mouseclick or joystick button click, to control the flight path of the UAV (col. 1, lines 33- 35), were not well-understood, routine, or conventional at the time of the invention.

30.     Moreover, the ability to upload multiple waypoints enabled more complex missions to be performed with just a few keystrokes or mouseclicks on the remote control device (col. 1, lines 64-67 and col. 2, lines 1-2, 10-11), and the use of a socket to facilitate communications between the UAV and the remote control device (col. 2, lines 34-37), were also not well-understood, routine, or conventional at the time of the invention.

DEFENDANT'S ACTS

31.     Defendant operates as a provider of drone products and solutions and provides hardware and software directed to drones to their customers in the United States, including in this District.

32.     On information and belief, Defendant designs, develops, supports, and coordinates the importation into the United States of the exemplary accused products set forth below.

33.     Defendant's Yuneec Typhoon Drones ("UAV") include obstacle avoidance system to avoid obstacles in the drone's way as it navigates.  For example, Typhoon H Plus includes a

GPS receiver. In order to navigate towards the user, Typhoon H Plus determines the flight path using the received GPS data from the ground station and identify anticipated obstacles along the determined flight route.



**Product Description**

Capturing breathtaking still photos and 4K videos is made easy with the Yuneec Typhoon H Plus drone. Its Intel RealSense Technology detects and avoids obstacles while navigating safely through its set route or toward you with the Follow Me mode. The ST16S all-in-one controller has a large 7-inch screen that displays the real-time footage from the camera.

**Features:**

**Intel RealSense Technology**

The intelligent obstacle navigation technology is used to detect obstacles and self-navigate around those obstacles while flying or following the user.

https://www.amazon.com/Yuneec-Hexacopter-Controller-Technology-Accessories/dp/B07FLGQX5C

34.     The Accused Products use sonar to detect obstacles.



https://us.yuneec.com/typhoon-h-plus/

35.    The Accused Products also include a GPS receiver.

**Specifications**

| Aircraft | |
|---|---|
| Product Name | APV System |
| Model | TYPHOON H PLUS |
| Max Takeoff Weight | 72.31oz (2050g) |
| Dimensions | 21.9x19.1x12.0in (556x485x305mm) |
| Diagonal Size (Propellers Excluded) | 20.4in (520mm) (Six Rotors) |
| Propeller Size | 9.8in (248mm) |
| Propeller Pitch | 5.7in (145mm) |
| Max Ascent Speed | 8.9mph (4m/s) |
| Max Descent Speed | 5.6mph (2.5m/s) |
| Max Speed | Sport: 44.7mph (72Km/h), Angle: 31.1mph (50Km/s) |
| Max Tilt Angle | Sport mode: 35°, Angle: 35° |
| Max Angular Speed | 150°/s |
| Max Service Ceiling Above Sea Level | 16404ft (5000m) (Tested) |
| Max Flight Time | Approx. 25min |
| Operating Temperature Range | 32° to 104°F (0° to 40°C) |
| Satellite Positioning Systems | GPS/GLONASS |
| Operating Environment | Regular Flight Condition, No Transparent Obstacles |
| Obstacle Sensory Range | 1.6ft-30ft (0.5m-10m) (RealSense) |
| Front Obstacle Avoidance Sensor | Ultrasonic Sensor and RealSense |

https://us.yuneec.com/wp-content/uploads/2021/01/TYPHOON-H-PLUS-RS_USER-

MANUAL_V1.0_20180830.pdf

36.    Yuneec Drones determine the flight plan using the GPS receiver and identify

anticipated obstacles along the determined flight route.

37.     The Accused Products correct a trajectory to avoid obstacles.



**Stay on Target**

Typhoon H Plus uses GPS – not just vision – to track targets. From a tiny tree branch to a large building, Typhoon H can still navigate around ob- stacles, regardless of size, and stay in contact with the subject, even if it becomes obscured.

https://yuneec.online/typhoon-h-plus/

38.     Defendant instructs its customers in how to operate the Accused Products in an infringing manner, including by way of Owner's Guides. *See, e.g.,* https://us.yuneec.com/wp-content/uploads/2021/02/H520_1-6_Update_Guide.pdf.

39.     On information and belief, Defendant incorporates hardware components and computer code to practice the claimed method.  Also on information and belief, Defendant causes to be executed or directs or controls the Accused Products to execute that code and other computerized instructions to initiate, configure and carry out the claimed methods.

40.     But for Defendant including this code and the execution of this code by or at the direction or control of Defendant, no infringement would occur. Defendant thus controls the timing and performance of the claimed methods.

41.     On information of belief, Defendant also implements contractual protections in the form of license and use restrictions with its customers to preclude the unauthorized reproduction, distribution, and modification of its software.

42.     Moreover, on information and belief, Defendant implements technical precautions to attempt to thwart customers who would circumvent the intended operation of Defendant's products.

## V.  COUNTS OF PATENT INFRINGEMENT

### COUNT ONE
### INFRINGEMENT OF U.S. PATENT NO. 7,228,232

43.     Wildcat Licensing incorporates by reference its allegations in the preceding paragraphs as if fully restated in this paragraph.

44.     Wildcat Licensing is the assignee and owner of all right, title, and interest to the '232 Patent. Wildcat Licensing has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

45.     Exemplary infringing products include Yuneed Typhoon drones, all substantially similar products, all associated computer hardware, software and digital content, and all products operating in a substantially similar manner ("'232 Exmplary Infringing Products"). On information and belief, at least since the release of the '232 Exemplary Infringing Products and until the expiration of the '232 Patent, without authorization or license from Wildcat Licensing, Defendant was directly infringing each and every element of at least claim 1 of the '232 Patent, either literally or equivalently, as infringement is defined by 35 U.S.C. § 271(a), including through making, using (including for testing purposes), selling, and offering for sale methods and articles infringing one or more claims of the '232 Patent. Defendant is thus liable for direct infringement of the '232 Patent pursuant to 35 U.S.C. § 271(a).

46.     The '232 Exemplary Infringing Products implement the claimed obstacle detection and avoidance, as set forth above and in the excerpts from Defendant's technical manuals.

47.     On information and belief, at least since the release of the '232 Exemplary Infringing Products and until the expiration of the '232 Patent, without authorization or license from Wildcat Licensing, Defendant was indirectly infringing each and every element of at least claim 1 of the '232 Patent, either literally or equivalently, including actively and knowingly inducing infringement of the '232 Patent under 35 U.S.C. § 271(b). Such inducements include without limitation, with specific intent to encourage the infringement, knowingly inducing consumers to use infringing articles and methods that Defendant knew or should have known infringe one or more claims of the '232 Patent. Defendant instructs and encourages customers to make and use the patented inventions of the '232 Patent by operating Defendant's products in accordance with Defendant's instructions and specifications. Defendant specifically intends its customers to infringe by implementing obstacle avoidance through obstacle identification and piloting of the UAV in accordance with claimed avoidance algorithms.

48.     On information and belief, at least since the release of the '232 Exemplary Infringing Products and until the expiration of the '232 Patent, without authorization or license from Wildcat Licensing, Defendant was indirectly infringing each and every element of at least claim 1 of the '232 Patent, including contributory infringement of the '232 Patent under 35 U.S.C. § 271(c) and/or § 271(f), either literally and/or under the doctrine of equivalents. Defendant's contributory infringement includes without limitation, Defendant's offer to sell, a component of a product or apparatus for use in a process, that (i) is material to practicing the invention claimed by claim 1 of the '232 Patent, (ii) is not a staple article or commodity of commerce suitable for substantial non-infringing use, and (iii) Defendant is aware or knows to be especially made or especially adapted for use in infringement of the '232 Patent. Defendant specifically intends its customers to infringe by implementing access control lists for filtering and dropping of packets

implemented at the ingress port for egress pass/drop determination, as set forth above and in the excerpts from Defendant's technical manuals.

49.     On information and belief, Defendant's customers deploy the accused products on networks in combination with other products. The specific code portions and modules directed to the infringing functionality will be identified as those systems are made available for inspection and review by Wildcat Licensing.

50.     As a result of Defendant's infringement of the '232 Patent, Wildcat Licensing has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement under 35 U.S.C. § 284, but in no event, less than a reasonable royalty.

COUNT TWO
INFRINGEMENT OF U.S. PATENT NO. 7,231,294

51.     Wildcat Licensing incorporates by reference its allegations in the preceding paragraphs as if fully restated in this paragraph.

52.     Wildcat Licensing is the assignee and owner of all right, title, and interest to the '294 Patent. Wildcat Licensing has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

53.     Exemplary infringing products include Yuneec Typhoon drones, all substantially similar products, all associated computer hardware, software and digital content, and all products operating in a substantially similar manner ("'294 Exemplary Infringing Products"). On information and belief, at least since the release of the '294 Exemplary Infringing Products and until the expiration of the '294 Patent, without authorization or license from Wildcat Licensing, Defendant was directly infringing each and every element of at least claim 1 of the '294 Patent, either literally or equivalently, as infringement is defined by 35 U.S.C. § 271(a), including through

ORIGINAL COMPLAINT
-16-

making, using (including for testing purposes), selling, and offering for sale methods and articles infringing one or more claims of the '294 Patent. Defendant is thus liable for direct infringement of the '294 Patent pursuant to 35 U.S.C. § 271(a).

54.    The '294 Exemplary Infringing Products implement selection and implementation of flight path waypoints in the manner claimed.

55.    On information and belief, at least since the release of the '294 Exemplary Infringing Products and until the expiration of the '294 Patent, without authorization or license from Wildcat Licensing, Defendant was indirectly infringing each and every element of at least claim 1 of the '294 Patent, either literally or equivalently, including actively and knowingly inducing infringement of the '294 Patent under 35 U.S.C. § 271(b). Such inducements include without limitation, with specific intent to encourage the infringement, knowingly inducing consumers to use infringing articles and methods that Defendant knew or should have known infringe one or more claims of the '294 Patent. Defendant instructs and encourages customers to make and use the patented inventions of the '294 Patent by operating Defendant's products in accordance with Defendant's instructions and specifications. Defendant specifically intends its customers to infringe by implementing selection of waypoints using the GUI, mapping the pixels location to earth coordinates, communicating waypoint coordinates and piloting the UAV in the manner claimed.

56.    On information and belief, at least since the release of the '294 Exemplary Infringing Products and until the expiration of the '294 Patent, without authorization or license from Wildcat Licensing, Defendant was indirectly infringing each and every element of at least claim 1 of the '294 Patent, including contributorily infringing the '294 Patent under 35 U.S.C. § 271(c). Defendant's contributory infringement includes without limitation, Defendant's offer to

sell, a component of a product or apparatus for use in a process, that (i) is material to practicing the invention claimed by claim 1 of the '294 Patent, (ii) is not a staple article or commodity of commerce suitable for substantial non-infringing use, and (iii) Defendant is aware or knows to be especially made or especially adapted for use in infringement of the '294 Patent.

57.     On information and belief, Defendant's customers deploy the accused products on networks in combination with other products. The specific code portions and modules directed to the infringing functionality will be identified as those systems are made available for inspection and review by Wildcat Licensing.

58.     As a result of Defendant's infringement of the '294 Patent, Wildcat Licensing has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement under 35 U.S.C. § 284, but in no event, less than a reasonable royalty.

COUNT THREE
INFRINGEMENT OF U.S. PATENT NO. 7,286,913

59.     Wildcat Licensing incorporates by reference its allegations in the preceding paragraphs as if fully restated in this paragraph.

60.     Wildcat Licensing is the assignee and owner of all right, title, and interest to the '913 Patent. Wildcat Licensing has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

61.     Exemplary infringing products include Yuneec Typhoon drones, all substantially similar products, all associated computer hardware, software and digital content, and all products operating in a substantially similar manner ("'913 Exemplary Infringing Products"). On information and belief, at least since the release of the '913 Exemplary Infringing Products and until the expiration of the '913 Patent, without authorization or license from Wildcat Licensing,

Defendant was directly infringing each and every element of at least claim 1 of the '913 Patent, as infringement is defined by 35 U.S.C. § 271(a), including through making, using (including for testing purposes), selling and offering for sale methods and articles infringing one or more claims of the '913 Patent. Defendant is thus liable for direct infringement of the '913 Patent pursuant to 35 U.S.C. § 271(a).

62.     The '913 Exemplary Infringing Products implement selection and implementation of flight path waypoints in the manner claimed, as set forth above and in the excerpts from Defendant's technical manuals.

63.     On information and belief, at least since the release of the '913 Exemplary Infringing Products and until the expiration of the '913 Patent, without authorization or license from Wildcat Licensing, Defendant was indirectly infringing each and every element of at least claim 1 of the '913 Patent, including contributorily infringing the '913 Patent under 35 U.S.C. § 271(c). Defendant's contributory infringement includes without limitation, Defendant's offer to sell, a component of a product or apparatus for use in a process, that (i) is material to practicing the invention claimed by claim 1 of the '913 Patent, (ii) is not a staple article or commodity of commerce suitable for substantial non-infringing use, and (iii) Defendant is aware or knows to be especially made or especially adapted for use in infringement of the '913 Patent.

64.     As a result of Defendant's infringement of the '913 Patent, Wildcat Licensing has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement under 35 U.S.C. § 284, but in no event, less than a reasonable royalty.

## VI.     JURY DEMAND

65.     Plaintiff Wildcat Licensing demands a trial by jury of all matters to which it is entitled to trial by jury, pursuant to FED. R. CIV. P. 38.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Wildcat Licensing prays for judgment and seeks relief against Defendant as follows:

A.    That the Court determine that one or more claims of the Wildcat Licensing Patents is infringed by Defendant, either literally or under the doctrine of equivalents;

B.    That the Court award damages adequate to compensate Wildcat Licensing for the patent infringement that has occurred, together with prejudgment and post-judgment interest and costs, and an ongoing royalty for continued infringement; and

C.    That the Court award such other relief to Wildcat Licensing as the Court deems just and proper.


DATED: June 13, 2023                    Respectfully submitted,

*/s/ Andrew G. DiNovo*
Andrew G. DiNovo
Texas State Bar No. 00790594
adinovo@dinovoprice.com
Christopher V. Goodpastor
Texas State Bar No. 00791991
cgoodpastor@dinovoprice.com
**DINOVO PRICE LLP**
7000 N. MoPac Expressway, Suite 350
Austin, Texas 78731
Telephone: (512) 539-2626
Facsimile:  (512) 539-2627

*ATTORNEYS FOR PLAINTIFF*